**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NUMBER: **08-81164-CIV-HURLEY/HOPKINS**

JULIE ANN DOMOTOR,

      **Plaintiff,**

    vs.

JUDGE RICHARD I WENNET; PALM
BEACH COUNTY SHERIFF'S OFFICE;
AND WILLIAM JACOB STEINEBACH, III.

      **Defendants.**

FILED by _IG_ D.C.
ELECTRONIC

**OCT 14, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**
**FALSE ARREST, FALSE IMPRISONMENT, MALICIOUS PROSECUTION,**
**INTENTIONAL INFLICTION OF EMOTIONAL ABUSE AND DISTRESS,**
**INVASION OF PRIVACY AND CONSPIRACY**

    Plaintiff, Julie Ann Domotor, hereinafter ["Plaintiff"] asserts the following claims against the defendants in the above-entitled action:

**(1)** violations of 42 U.S.C. 1983: false arrest and false imprisonment,

**(2)** Violations of 42 U.S.C. 1983: conspiracy,

**(3)** malicious prosecution,

**(4)** invasion of privacy, and

**(5)** Intentional infliction of emotional abuse and distress.

## I. PARTIES AND JURISDICTION

1. According to Rule 8(a), F.R.C.P., a violation of Plaintiff's civil rights according to the CIVIL RIGHTS ACT, 42 U.S.C. § 1983 and other stated violations occurred at the hands of the above listed Defendants.

2. The parties' residency is in at least two different states and all parties are United States Citizens.

3. The value of this claim is greater than $75,000.00.

1

4. Plaintiff Julie Ann Domotor, hereinafter ["Plaintiff"] is a resident of the State of Arizona, who currently resides in Maricopa County and whose mailing address is PO BOX 39664, PHOENIX, ARIZONA, 85069 in the United States of America.

5. Defendant Richard I Wennet, hereinafter ["Wennet"] is a resident of the State of Florida and who resides at 11038 OAK WAY CIRCLE, PALM BEACH GARDENS, FLORIDA 33410, in the county of Palm Beach in the United States of America. Wennet was and is a resident of the State of Florida during the relevant times of this action and is a former intimate partner of Plaintiff.

6. Defendant Palm Beach County Sheriff's Department, hereinafter ["PBSO"], whose mailing address is 3228 GUN CLUB ROAD, WEST PALM BEACH, FLORIDA 33406, which controls Palm Beach County Sheriff's Office in the County of Palm Beach in the State of Florida.

7. Defendant William Jacob Steinebach, III, hereinafter ["Steinebach"] who is the former Facilities Manager of the Palm Beach County Gun Club jail while Plaintiff Domotor was incarcerated, and resided in the County of Palm Beach, State of Florida during all relevant times of this action and who is also a former employee in Judge Wennet's Courthouse, and father of Plaintiff's former boyfriend, William Jacob Steinebach, IV,  who currently resides in Kent County in the State of Michigan at13880 POINTE NORTH COURT NE, CEDAR SPRINGS, MICHIGAN 49319 in the United States of America.

8. According to 28 U.S.C. 1332, Diversity of Citizenship of the above listed Plaintiff and Defendants', this Court has jurisdiction.

## II. STATEMENT OF CLAIMS

9. On June 13, 2006, after suffering months of violence and emotional abuse at the hands of Plaintiff's then boyfriend, 25 year old, William Jacob Steinebach, IV, which included an attempted assault on Plaintiff and punching several fist sized holes in Plaintiff's apartment walls, which then prompted her landlord to deliver an eviction notice, Plaintiff responded one night after a series of nasty phone calls by causing some minor property damage to her boyfriend's soft, Jeep top. William Jacob Steinebach, IV is the son of Defendant Steinebach whose son has a history of abusing women including an arrest in 2004 for beating his wife while serving in the United States Air Force and allegedly raping a girl in Jupiter, Florida,  Jupiter Police Report 07/17/2005, Case Number 01-05-020448.

10. Plaintiff was charged with Felony Criminal Mischief exceeding over $1,000 in Case Number 502006CF007831 even though the actual property damage to her boyfriend's vehicle did not exceed $400. The felony was dropped and filed as a misdemeanor, Case Number 502006MM016216.  That case was dismissed and refiled as a felony, Case Number 502007CF011084 and assigned to Judge Sandra McSorely, whose courtroom adjoins Wennet's courtroom.

11. Plaintiff learned from her public defender, Evelyn Pennington, that Defendant Steinebach had contacted the Palm Beach County Prosecutor's Office several times weekly requesting that the State Prosecutor, Moira Lasch, go after Plaintiff and put Plaintiff in prison even though he was not a victim in this case and the charges did not merit Felony charges.

12. Plaintiff learned from her boyfriend Steinebach, IV, that Defendant Steinebach contacted Wennet whom he knew from working in Wennet's Courthouse asking for his assistance in using the legal system to harm Plaintiff.  Defendant Steinebach was eager to get Plaintiff in jail because she witnessed his wife and his son abuse Defendant Steinebach's grandson with alcohol and witnessed other violations to their

2

grandson's temporary custody order. The Steinebach's were fighting for full custody and were worried Plaintiff's testimony regarding their child abuse would end their custody hopes.

13. In January 2007, Plaintiff pled to a misdemeanor and was placed on one year of Department of Correction's probation, which included a litany of terms including a no contact order for Defendant Steinebach and his wife even though they were not victims in this case and no evidence or claims of harassment. Additionally, Plaintiff's right to free speech was restricted from talking about the Steinebach's for an entire year.

14. Before Plaintiff took the plea, she secured a restraining order against boyfriend Steinebach, IV, due to his continued harassment against her. After taking the plea, she felt a violation occurred and filed a hearing with the Court. Her probation officer called her into DOC on the morning before that hearing and threatened her that enforcing her restraining order is considered "contact" and a violation of the terms of her probation. The probation officer told Plaintiff that the prosecutor, Moira Lasch was very powerful and that Plaintiff's probation had been red flagged and they would not hesitate to put her in prison for any violation. Plaintiff was told she might be arrested if she showed up at her restraining order hearing in North County Justice Court to defend her restraining order. Plaintiff appeared at her hearing and the prosecutor Moira Lasch arranged for the prosecutor's office at North County Courthouse to defend Plaintiff's boyfriend, Steinebach, IV, at this hearing even though it was a civil matter.

15. Plaintiff requested that her probation be transferred to Michigan or Arizona where she had family and friends and a transfer to Michigan was stipulated in the terms of Probation. However, Judge McSorely denied Plaintiff's request. Plaintiff requested the probation terms be altered to enable Plaintiff to leave the State of Florida to be with her family. Judge McSorely and Moira Lasch continually denied any and all of Plaintiff's requests which would enable her to leave Florida. Moira Lasch attempted to further restrict the terms of Plaintiff's probation in a response to Plaintiff's request to alter probation terms by prohibiting her further from working out and any and all Gold's Gyms in Florida.

16. After about 4 months on probation, which included monthly check-ins, drug tests, and surprise home visits with additional drug tests, Plaintiff had completed all the terms of her probation thus far including and paying off restitution in full. In May, 2007, Plaintiff's probation officer had her arrested because Defendant Steinebach's son filed a police report claiming Plaintiff sent him some text messages from a phone number listed in Louisiana who said they were "Julie" in the text message. There was no evidence or witnesses tying the phone number or the text messages to Plaintiff. Plaintiff was arrested and incarcerated for 33 days.

17. During Plaintiff's incarceration, Plaintiff sat in jail for 33 days wherein Defendant Steinebach, who worked in the Gun Club jail at the time, arranged to have the jail hold several pieces of Plaintiff's mail for weeks including, books which her family sent express mail. Delivery was confirmed, but the books were not delivered until almost 3 weeks later.

18. Judge McSorely delayed any meaningful court dates regarding Plaintiff's probation violation hearing in order to prolong Plaintiff's stay in jail at the request of Defendant Wennet. McSorely kept pushing Plaintiff's appearances off day after day which eventually put Plaintiff in front of Defendant Wennet, who recused himself from the case. After 33 days in jail, McSorely said a trial date might be possible in another 30 days and wouldn't consider a bond for Plaintiff's release. The prosecutor, Moira Lasch, refused to a "Time Served" plea even though all terms were completed and complied with according to the DOC. The only option given was a plea to be placed back on probation with no credit for the 33 days Plaintiff spent in jail for a first class misdemeanor. Plaintiff took the plea and was released and put back on probation on June 22, 2007.

3

19. On July 1, 2007, Plaintiff was out on a public beach called Peanut Island in Palm Beach County, Florida, surrounded by hundreds of people. While on the beach, Plaintiff ran into Wennet, her former intimate partner, and both ensued in some playful banter commenting about the nude women and fornication taking place around them. Plaintiff was carrying her Pentex Waterproof video camera and was taking multiple pictures and videos of the events occurring that day on the beach. Some of these events included public nudity and men and women simulating orgies. Plaintiff and Wennet were commenting on these events and some of these comments were captured and recorded on Plaintiff's Pentex waterproof video camera.

20. Wennet made numerous comments about how much he loved women's breasts and in particular, implants. Wennet referred to women's breasts as "breasticals." Wennet also told Plaintiff along with other people within earshot that he was going to use the images of these naked women's breasts for later that evening when he went home to masturbate. Wennet bragged to Plaintiff and the other people around him that he was able to Jack himself off using both his right and left hand. He announced to Plaintiff and the other onlookers that he was "ambidextrous" and seemed quite proud. Additionally, Wennet remarked to Plaintiff that she was good in bed, reflecting upon their previous sexual encounter.

21. Wennet knew Plaintiff was taking pictures and videos since he denied her request to take a picture with her and Plaintiff Wennet was also captured on the video clip saying to the camera, "Don't get me in the shot" and clearly moves away from the lens—acknowledging Plaintiff's and other people's cameras.

22. Wennet remarked that he was sad that he missed the scenes that Plaintiff told him she captured earlier on her video camera, but told Wennet that those videos would be available later on YouTube and MySpace to which Wennet remarked, "Thank God!"

23. A few weeks later, Plaintiff reviewed her videotapes from that day on Peanut Island. A portion of the tape wherein Wennet was seen and his voice was heard admiring women's breasts was uploaded onto YouTube.

24. A couple of weeks later, Wennet filed a police report with Detective James Mahoney of the Palm Beach County Sheriff's Office Court Services Division, which is located inside of Wennet's courthouse where he presides as a Criminal Court Judge. Wennet gave a sworn statement to Detective Mahoney wherein Judge Wennet claimed that he was a victim of a crime because even though he said he had no idea he was being videotaped, he was absolutely certain, Plaintiff was the one who videotaped him. He stated, "Ms. Domotor never informed me that she was making an audio recording and Ms. Domotor had absolutely no permission to record my voice. I am absolutely positive that Ms. Domotor committed this crime."

25. In late July of 2007, Deputy Mahoney barged into Plaintiff's place of employment in Delray Beach, Florida demanding to know who was in charge and then bullied his way into Plaintiff's office. He pulled out an 8.5 x 11 copy of Plaintiff's Florida driver's license and held it up as if trying to compare the picture to Plaintiff's face. He proceeded to tell Plaintiff that he was there about the videotape of Wennet on You Tube and that he was there to give Plaintiff a chance to explain herself before being sent away to prison for many years. When Plaintiff did not respond, Detective Mahoney got up to leave handing Plaintiff his business card and told Plaintiff to call her attorney because she was going away prison for a very, long time. As he walked out of the office, he announced to Plaintiff's co-worker's that he was going to have Plaintiff "on her knees by the end of the day."

26. A couple of days later, that same Detective arrested Plaintiff at her place of employment and when he had her alone in the jail cell at the Delray Beach Courthouse, proceeded to berate, belittle, and harass

4

Plaintiff. In particular, he said that she was a "worthless piece of trash... a piece of shit" and that he was going to "fuck out her eye sockets."

27. Plaintiff did not see a Judge in her case until about 40 days after incarceration. At Plaintiff's Bond hearing on September 19, 2007, Detective Mahoney was questioned and testified under oath as to his harassment of Plaintiff. That very day he had mocked the Plaintiff in open court asking her, "how jail was treating her" and "Are you still playing the tough girl?" and then proceeded to stand in front of Plaintiff and stare her down as if too threaten her while she sat in court, chained waiting for her hearing to commence.

28. At Plaintiff's Bond Hearing on September 19, 2007, Detective Mahoney testified under oath that based solely on Wennet's statement that he didn't know he was being videotaped and the IP Address listed as the address where Plaintiff was allegedly staying at the time, the Detective arrested Defendant on August 27, 2008, and Palm Beach County charged Defendant with the three felonies:
**I Count Eavesdropping: Unlawful Interception of Communication**
923.03 1A (FT) – Eavesdropping-Illegal Interception of Communication; and
**II Counts of Illegal Distribution of Communication**
934.03 1C (FT) – Invade Privacy-Illegal Disclosure of Communication.

29. Detective Mahoney subpoenaed the IP address from where the You Tube video was uploaded and the address listed was owned and registered to Plaintiff's co-worker—NOT Plaintiff. Her coworker, Mary Yraima, who lives there with her teenage daughter, were not charged with distribution charges, only Plaintiff was charged even though no evidence proved Plaintiff uploaded the videotape. At Plaintiff's bond hearing, the Martin County Prosecutor, Erin Kirkwood, told the Court that Mary Yraima said I was fired, which was false.

30. Wennet was in the courthouse the day of Plaintiff's bond hearing, but did not make his presence known during the proceedings and did not testify at Plaintiff's hearing. However, two witnesses saw and signed sworn affidavits that they saw Wennet come out of courtroom areas suggesting Wennet traveled to the courthouse not to testify, but to meet with Plaintiff's Judge in private prior to Plaintiff's Bond Hearing. One witness stated that he heard Judge Martz, a Judge who worked at the Delray Beach Courthouse, say to Wennet, "How do you like my buddy, Deluca?" referring to Plaintiff's Bond Hearing Judge—Judge Deluca. Plaintiff's bond was subsequently denied and the Judge assigned to Plaintiff's case ordered she remain in jail indefinitely.

31. Detective Mahoney's continued abusive and threatening behavior towards Plaintiff suggests that he was instructed by Wennet to harass and threaten Plaintiff in hopes of causing Plaintiff to suffer greater pain and distress. This Detective harassed her from the day he confronted her at her place of employment up until as recently as May 20, 2008, when this same Detective sent Plaintiff an email in Arizona.

32. Plaintiff was supposedly represented by Cherry Grant of the Palm Beach County Public Defender's Office until it was later revealed almost two months later that Carey Haughwout, The Palm Beach County Public Defender, once represented Defendant and is personally acquainted with Wennet. Even after this disclosure, the Public Defender's office delayed filing their Motion to Withdraw Requesting the Court Appoint Conflict Free Counsel until October 26, 2008. The public defender kept contacting Plaintiff in jail conveying varying plea offers from the Prosecutor even though she told Plaintiff they no longer represented her.

33. The Public Defender's Office purposefully stalled Plaintiff's case as a favor to Wennet their "one time client," and "personal acquaintance," in order to keep the Plaintiff locked up in jail and out of the courtroom for as long as possible.

34. Many people's voices were captured on that video yet only Wennet's right to privacy existed according to the State of Florida as no other charges were filed protecting the hundreds of other so-called victims that day whose voices were captured on Plaintiff's videotape without their consent and knowledge. The only reason Plaintiff was arrested was because Wennet used his position of power as a Judge in Palm Beach County instructing the Palm Beach County Prosecutor's office, who turned it over to Martin County, to maliciously prosecute and falsely arrest and imprison Plaintiff for acts which are not crimes.

35. Based upon these facts, Judge Wennet had no reasonable expectation of privacy and therefore, no crime ever occurred. The way the State of Florida applied these statutes to this case violates the Constitution of the United States of America. The absurdity that a Judge, an elected public official, has a reasonable expectation of privacy on a public beach in the middle of hundreds of people lends itself to ridiculous standards that could never be enforced.

36. Wennet knowingly put Plaintiff in harm's way using his position and connections in Palm Beach County to have Plaintiff locked up in jail for 83 days violating her civil rights as an American Citizen, which also subjected Plaintiff to a violent environment ripe with such contagious infections as MRSA, AIDS, Hepatitis B, Hepatitis C, and HIV. Wennet is well aware of the conditions in jail and purposefully subjected Plaintiff to the horrors of confinement as a means of inflicting his own form of punishment thereby abusing his position of power as an elected public official. Wennet used the system and his position of power to intentionally inflict emotional abuse and distress causing the Plaintiff extreme emotional harm and substantial risk and to her health and wellbeing.

37. Defendant's Wennet, Steinebach and the Palm Beach County Sheriff's Department used their positions of power and the connections with the criminal system conspiring with each other to violate Plaintiff's Constitutional rights guaranteed under the United States Constitution. Plaintiff was falsely arrested, charged, imprisoned and maliciously prosecuted in order to cause Plaintiff intentional infliction of emotional abuse and distress because of their personal relationship and personal vendettas against Plaintiff.

## III. RELIEF SOUGHT

38. Since Plaintiff's attempts to resolve this matter outside of litigation have failed. Plaintiff respectfully requests this Court rule in favor of Plaintiff's Motion and asks that this Court remove any and all criminal charges arising from Case Numbers: 07CF011084AMB and Case Number 502006CF010007 against Plaintiff.

39. Plaintiff respectfully request that this Court order Defendants pay Plaintiff for damages arising from these violations of Plaintiff's United States Constitutional and Civil Rights which included false imprisonment, false arrest, false charges, malicious prosecution, invasion of privacy and conspiracy—all of which were clearly violated, in the amount of $2,176,200.00 for causing her extreme emotional, physical and financial distress.

6

## IV.  **JURY DEMAND**

40. Plaintiff hereby requests a Jury trial on these matters.

41. As Plaintiff is indigent and lives over 2,300 miles away, Plaintiff respectfully requests that this Court allow her to appear telephonically for most hearings and conferences.  Plaintiff also requests at least a 30 day notice before any and all hearing and conference dates where Plaintiff's physical presence is demanded in order for Plaintiff to arrange affordable travel to the State of Florida.

Signed this ___7___ day of October, 2008.

**JULIE DOMOTOR**
**PLAINTIFF**
**PO BOX 39664**
**PHOENIX, ARIZONA 85069**

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original was mailed to the UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA, 400 North Miami Avenue, Room 8N09, Miami, Florida 33128-7788 and copies hereof have been furnished by mail to the following Defendants: RICHARD I. WENNET, 11038 OAK WAY CIRCLE, PALM BEACH GARDENS, FLORIDA 33410;  PALM BEACH COUNTY SHERIFF'S OFFICE, LEGAL DEPARTMENT,3228 GUN CLUB ROAD, WEST PALM BEACH, FLORIDA 33406; and WILLIAM JACOB STEINEBACH, III, 13880 POINTE NORTH COURT NE, CEDAR SPRINGS, MICHIGAN 49319, this 7th day of October, 2008.

JULIE DOMOTOR, Pro Se
Plaintiff

8

JS 44 (Rev. 2/08)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**
Domotor, Julie Ann

**DEFENDANTS** Judge Wennet, Richard I.;
Palm Beach County Sheriff's Office;
Steinebach, III, William Jacob. Palm Beach

**(b)** County of Residence of First Listed Plaintiff _Maricopa_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _Palm Beach_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Prose
PO Box 39664, Phx, Az 85069
561-914-1327

Attorneys (If Known) None Known

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☒ PALM BEACH ☐ MARTIN ☐ ST. LUCIE

FILED by _IG_ D.C.
ELECTRONIC
**OCT 14, 2008**
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

WPB 08 CV 81164 - Hurley

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)

| | PTF | DEF |
|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 |
| Citizen of Another State | ☒ 2 | ☐ 2 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

☒ 440 Other Civil Rights

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding

**VI. RELATED/RE-FILED CASE(S).** a) Re-filed Case ☐ YES ☒ NO   b) Related Cases ☐ YES ☒ NO
JUDGE                          DOCKET NUMBER

**VII. CAUSE OF ACTION**
U.S. Civil Statute: 42 USC 1983, False Arrest, False Imprisonment
US Civil Statute: 28 USC 1332, Diversity. Malicious Prosecution, + other claims.
LENGTH OF TRIAL via 4 days estimated

**VIII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 2,176,200.00   JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD s/ Julie A. Domotor
DATE 10/6/08

IFP YES