UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-81164-CIV-COHN/SELTZER

JULIE ANN DOMOTOR,

      Plaintiff,

v.

RICHARD I. WENNET and WILLIAM
JACOB STEINEBACH, III, CAREY
HAUGHWOUT and JAMES M. MAHONEY,

      Defendants.

_____/

## ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT PREJUDICE

**THIS CAUSE** is before the Court on Defendant Wennet's Motion to Dismiss [DE

13] ("Wennet MTD") and Defendant Carey Haughwout Public Defender's Motion to

Dismiss [DE 23] ("Haughwout MTD"). The Court has considered both Motions,

Plaintiff's Response to Defendant Wennet's Motion to Dismiss [DE 17] ("Response to

Wennet MTD"), Plaintiff's Response to Defendant Haughwout's Motion to Dismiss [DE

26] ("Response to Haughtwout MTD"), the record in this case, the applicable law and is

otherwise advised in the premises.[1]

### I. BACKGROUND

Plaintiff's First Amended Complaint ("Amended Complaint" or "Am. Compl.")

alleges three claims under 42 U.S.C. § 1983 for (1) false arrest; (2) false imprisonment;

and (3) conspiracy. Am. Compl. ¶ 37. Plaintiff also alleges six state law claims: (1)

malicious prosecution; (2) invasion of privacy; (3) defamation; (4) libel; (5) legal

---

[1]    Neither Wennet nor Haughwout filed a Reply.

malpractice; and (6) intentional infliction of emotional distress. Id. ¶ 37, §§ V-VII. The Amended Complaint names as Defendants Richard I. Wennet, William Jacob Steinebach, III, Carey Haughwout and James Mahoney. See Am. Compl. Plaintiff seeks damages in the amount of $2,176,200 and requests that the Court remove all criminal charges from her record arising from two convictions discussed in the Amended Complaint. Id. ¶¶ 38-39.

### 1.    Plaintiff's Arrests and Convictions

The relevant facts begin in June of 2006, when Plaintiff was charged with felony criminal mischief for causing property damage to her ex-boyfriend's jeep. Id. ¶ 9. Plaintiff's ex-boyfriend is the son of Defendant Steinebach. Id. Plaintiff alleges that she learned from her public defender that Defendant Steinebach contacted the Palm Beach Prosecutor's Office numerous times requesting that the prosecutor "go after" Plaintiff and put her in prison. Id. ¶ 11. In addition, Plaintiff allegedly learned from her ex-boyfriend that Defendant Steinebach contacted Defendant Wennet, who was a Palm Beach County Circuit Court Judge at the time, and asked for Wennet's assistance in using the legal system to harm Plaintiff. Id. ¶ 12. In January 2007, Plaintiff pled to a misdemeanor for the incident involving her ex-boyfriend's jeep and Plaintiff was placed on probation and instructed to have no contact with her ex-boyfriend or Defendant Steinebach's family. Id. ¶ 13.

In May of 2007, Plaintiff's probation officer arranged for Plaintiff's arrest for violating the terms of her probation based on a police report filed by her ex-boyfriend. Id. ¶ 16. The police report claimed that Plaintiff sent her ex-boyfriend text messages based on the fact that her ex-boyfriend received text messages from a Louisiana phone

2

number stating they were from "Julie." Id. There was no evidence or witnesses tying the phone number or the messages to Plaintiff. Id.

Plaintiff was arrested and incarcerated for 33 days. Id. Plaintiff was placed in the jail where Defendant Steinebach worked and he allegedly arranged to delay the delivery of several pieces of Plaintiff's mail. Id. ¶ 17. The Amended Complaint alleges that when Plaintiff's case came before Judge McSorely, the judge delayed court dates in order to prolong Plaintiff's incarceration at the request of Defendant Steinebach and with the assistance of Defendant Wennet. Id. ¶ 18. Plaintiff ultimately accepted a plea to a first class misdemeanor and was placed back on probation with no credit for the 33 days Plaintiff spent in jail. Id.

On July 1, 2007, Plaintiff encountered Defendant Wennet on a public beach in Palm Beach County. Id. ¶ 19. Plaintiff and Wennet, who had a prior personal relationship, engaged in an off-color conversation. Id. ¶ 20. Plaintiff had a video camera at the time and she captured footage of Wennet. Id. ¶ 21. Weeks later, the footage of Wennet was uploaded onto the internet via the website YouTube. Id. at 23. The Amended Complaint alleges that "the IP address from where the videotaped [sic] was uploaded onto YouTube was owned and registered to Plaintiff's co-worker." Id. § VII. Defendant Wennet filed a police report with Detective James Mahoney of the Palm Beach County Sheriff's Office based on Plaintiff's recording. Id. ¶ 24. Wennet provided a sworn statement that read in part: "Ms. Domotor never informed me that she was making an audio recording and Ms. Domotor had absolutely no permission to record my voice. I am absolutely certain that Ms. Domotor committed this crime." Id.

In late July of 2007, Detective Mahoney allegedly "barged" into Plaintiff's place of

3

employment and informed her that he was there regarding the videotape of Wennet. Id. ¶ VII. Detective Mahoney informed Plaintiff that he was there to give Plaintiff a chance to explain herself "before [ ] sending her away to prison for many years." Id. Allegedly, Detective Mahoney proceeded to harass Plaintiff and, several days later, he returned to her place of employment to arrest her. Id. ¶¶ 25-26. The Amended Complaint describes vulgar and threatening language that Detective Mahoney used on both occasions. In addition, the Amended Complaint alleges that Detective Mahoney also threatened Plaintiff at her bond hearing on September 17, 2007. Id. § VII. Plaintiff further alleges that Detective Mahoney has continued to harass her as recent as May 20, 2008, when the detective sent her an email. Id. ¶ 31. According to Plaintiff, "Defendant Mahoney acted on instructions and encouragement from Defendant Wennet to harass and threaten Plaintiff causing Plaintiff to suffer pain and distress." Id. VII. "The actions of Defendant Mahoney were wrongful, malicious, and designed to damage and harm Plaintiff. Plaintiff suffered extreme mental and emotional anguish as a result of Defendant Mahoney's wrongful action. Plaintiff incurred attorney fees, loss of wages, loss of health care, and loss of credit as a result of Defendant Mahoney's deliberate and malicious acts." Id.

After Plaintiff was arrested by Detective Mahoney, Plaintiff spent approximately 40 days in jail before she saw a judge in her case. Id. ¶ 27. Defendant Wennet was at the courthouse on the day of Plaintiff's bond hearing. Id. ¶ 30. Plaintiff claims to be in possession of two sworn affidavits confirming Wennet's presence. Id. The Amended Complaint alleges that a witness informed Plaintiff that he heard Judge Matz say to Wennet, "[h]ow do you like my buddy Deluca?" referring to the judge presiding over

4

Plaintiff's bond hearing.  Id.  Plaintiff's bond was denied.  Id.  Plaintiff further alleges that the Public Defender's Office purposefully stalled Plaintiff's case as a favor to Wennet because he was a "one time client" and "personal acquaintance."  Id. ¶ 33. Ultimately, Plaintiff remained in jail for 83 days.  Id. ¶ 36.  The Amended Complaint does not specify how this action was resolved.

Based on the allegations described above, the Plaintiff alleges § 1983 claims of false arrest and false imprisonment and state law claims for malicious prosecution and intentional infliction of emotional distress against Defendants Wennet, Steinebach and Mahoney.  With respect to Defendants Wennet and Steinbebach, Plaintiff also brings a § 1983 claim for conspiracy and a state law claim for invasion of privacy.

The Wennet MTD states that in connection with Plaintiff's criminal case involving Defendant Wennet, Case No. 07CF011084, Plaintiff entered a plea on October 31, 2007.  See Wennet MTD at 2; see also Response to Wennet MTD at 2 (confirming that Plaintiff entered a plea of "no contest" in Case No. 07CF011084).  The Wennet MTD further states that "the Plaintiff in September of 2008 filed a 3.850 motion for post conviction relief in an attempt to vacate her plea in the criminal case.  The Plaintiff's first motion was dismissed without prejudice and the Plaintiff has filed an amended motion for post conviction relief which appears as of January 21, 2009 to still be active and pending."  Wennet MTD at 2-3.  Plaintiff's Response states that "Plaintiff has since learned that both criminal Case numbers 06CF10007 and 07CF011084, from which came the issues now presented in this Court, are in 'REOPEN STATUS' and it is believed that an evidentiary hearing date will soon follow."  Response to Wennet MTD at 2.

## 2.   Defamation and Libel

Plaintiff alleges that Defendant Wennet "made several defamatory statements to the press about Plaintiff." Id. § V.  The Amended Complaint cites to an article in the Palm Beach Post wherein Wennet is quoted regarding a settlement demand of $400,000 allegedly made by Plaintiff in connection with a law suit he intended to file in Arizona. Id.  The article quotes Wennet as saying:  "I'm not going to be extorted." Id. In addition, Plaintiff cites to an article in the Sun Sentinel in which Wennet is quoted as saying:  "Within days of her being released [from jail], she was stalking me on Peanut Island with her camera." Id.  The article contains another quotation of Wennet claiming that the Plaintiff is "trying to extort $400,000." Id.

Based on these articles, the Amended Complaint alleges that "Defendant Wennet . . . published false, untrue and defamatory statements about Plaintiff . . . that she is an extortionist.  Defendant, being a lawyer and a judge, knows or has reason to know of his statement's falsity and that Plaintiff's simple filing of a well pled complaint and attempt to settle did not constitute extortion." Id.  In addition, Plaintiff alleges "Defendant Wennet portrayed Plaintiff as a stalker . . . .  [Wennet], being a lawyer and a judge, knows or has reason to know the falsity of this accusation and [Wennet's] own acts portrayed on the videotape were not behaviors by a man who claims he felt a reasonable fear of death or was in danger of serious bodily harm by Plaintiff." Id.  The Amended Complaint alleges that Wennet's accusations of extortion and stalking "were made by Defendant Wennet with malice, hatred, and ill will toward Plaintiff with a desire to injure her reputation and invalidate her legal claims to the press." Id.

6

3.    **Legal Malpractice**

The Amended Complaint brings a claim of legal malpractice against Carey

Haughwout, who represented Plaintiff in State of Florida v. Domotor, Case No.

07CF011084. See Am Compl. § VI. Plaintiff alleges that Haughwout "negligently failed

to act with the degree of competence generally possessed by attorneys in the State

who handle legal matters similar to Plaintiff's." Id. Allegedly, Haughwout "did not reveal

until almost two months into Plaintiff's incarceration that she represented [Wennet] on a

civil matter as his personal lawyer and is personally acquainted with him." Id. "Even

after this revelation, the Public Defender delayed filing their Motion to Withdraw

Requesting the Court Appoint Conflict-Free Counsel until October 26, 2008 – weeks

after [Haughwout] finally revealed the conflict of interest." Id. Plaintiff alleges that the

"Public Defender's Office purposefully stalled Plaintiff's case as a favor to their former

client, and 'personal acquaintance,' [ ], in order to keep the Plaintiff incarcerated and

without legal remedy as long as possible." Id.

Based on the allegations in the Amended Complaint, Plaintiff asserts that

"Haughwout's conduct was a gross breach of [Haughwout's] duty to exercise

reasonable care, skill and diligence on Plaintiff's behalf." Id. The Amended Complaint

claims that Haughwout was "negligent and/or committed malpractice and breached her

legal and ethical duties to Plaintiff." Id.

## II. LEGAL STANDARD

The Court may grant a motion to dismiss when, "on the basis of a dispositive

issue of law, no construction of the factual allegations will support the cause of action."

Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th

7

Cir. 1993). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

At this stage of litigation, the allegations of a complaint are taken as true and are construed in the light most favorable to the plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1979) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

In addition, because Plaintiff is proceeding *in forma pauperis*, the Amended Complaint is subject to screening pursuant to 28 U.S .C. § 1915(e)(2).  Section 1915 reads in pertinent part:

> (e) (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-
> ...
>
> (B) the action or appeal-
> ...
>
> (i)     is frivolous or malicious;
> (ii)    fails to state a claim on which relief may be granted; or
> (iii)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915.  Dismissals for failure to state a claim under § 1915(e)(2)(B)(ii) are

governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6).").

## III. ANALYSIS

### 1.   <u>Plaintiff's § 1983 Claims</u>

In order to state a claim under § 1983, a plaintiff is required to demonstrate both (1) a deprivation of a right secured under the Constitution or federal law; and (2) that such a deprivation occurred under color of state law. <u>See</u> 42 U.S.C. § 1983; <u>see also</u> <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998).

### A.   *Deprivation of a Federal Right*

Plaintiff's claims of false arrest and false imprisonment involve deprivations of liberty and due process. An arrest or detention made (1) without a warrant and without probable cause; or (2) pursuant to a constitutionally invalid law can establish a deprivation of federal rights. <u>See</u> <u>Pierson v. Ray</u>, 386 U.S. 547, 555-57 (1967). The Amended Complaint alleges that "Defendant's Wennet [and] Steinebach used their positions of power and the connections with the criminal system conspiring with each other to violate Plaintiff's Constitutional rights . . . ." Am. Compl. ¶ 36. Further, Plaintiff alleges that the "way the State of Florida applied the[ ] statutes to [Plaintiff's] case violates the Constitution of the United States of America." <u>Id.</u> ¶ 35. Moreover, the Wennet MTD does not specifically challenge the Amended Complaint as to this element. Therefore, Plaintiff's § 1983 claims satisfy the first requirement at this stage in the litigation.

**B.**    *Under Color of State Law*

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42, 50 (1988) (citations omitted).  Plaintiff alleges that Defendants Wennet and Steinebach used their status and influence as state officials in connection with the acts complained of, however, the Amended Complaint does not allege that these Defendants committed such acts in their official capacities. See, e.g., Am. Compl. ¶¶ 11-12, 36.  Nevertheless, Plaintiff is able to survive a motion to dismiss with respect to the "under color of law" requirement of § 1983 because Defendants Wennet and Steinebach allegedly conspired with judges and prosecutors who were acting in official capacities. See Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). "Private persons, jointly engaged with state officials in the challenged action, are acting [ ] 'under color' of law for purposes of § 1983 actions." Id. at 27-28.

In Dennis, the Supreme Court also held that the immunity available to a judge would not extend to his co-conspirators. See id. at 31-32 ("we agree with the Court of Appeals that the potential harm to the public from denying immunity to private co-conspirators is outweighed by the benefits of providing a remedy against those private persons who participate in subverting the judicial process and in so doing inflict injury on other persons").  Therefore, Defendants Wennet and Steinebach may not rely on the immunity afforded to the state officials with whom they allegedly conspired.

**C.**   *The Favorable-Termination Requirement*

   **i.**   **Heck v. Humphrey and Its Progeny**

The viability of Plaintiff's Amended Complaint is determined by the application

of the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, a

prisoner serving a 15-year sentence for manslaughter filed a § 1983 action alleging an

"unlawful, unreasonable and arbitrary investigation," destruction of evidence and an

illegal voice-identification procedure.  Id. 478-79.  The complaint sought monetary

damages but did not ask for injunctive relief or the prisoner's release from custody.  Id.

at 479.  The Supreme Court affirmed dismissal of the action holding that:

> in order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into question by a
> federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A
> claim for damages bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable under § 1983.

Id.  Justice Scalia, writing for the majority stated, "[w]e think the hoary principle that civil

tort actions are not appropriate vehicles for challenging the validity of outstanding

criminal judgments applies to § 1983 damages actions that necessarily require the

plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always

applied to actions for malicious prosecution."  Id. at 486.  The majority reasoned that

"'Congress has determined that habeas corpus is the appropriate remedy for state

prisoners attacking the validity of the fact or length of their confinement, and that

specific determination must override the general terms of § 1983.'"  Id. at 482 (quoting

Preiser v. Rodriguez, 411 U.S. 475, 490 (1973)).

   In his concurring opinion, Justice Souter explained that because petitioners may

only obtain habeas relief if they are "in custody," persons "who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences" are prohibited from bringing habeas actions. Id. at 500 (Souter, J., concurring). Therefore, the favorable-termination requirement would deny such persons a federal forum for the alleged deprivation of federal rights. Justice Souter argued this denial is impermissible because (1) § 1983 is to be broadly construed, and (2) absent "unambiguous Congressional direction," the Supreme Court "lacks the authority" to deny a § 1983 cause of action to individuals who can not pursue habeas relief. Id. at 501.

In direct response to Justice Souter's concurrence, Scalia noted in Heck that "the principle barring collateral attacks – a longstanding and deeply rooted feature of both the common law and our own jurisprudence – is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." Heck, 512 U.S. at 490 n.10.

The current debate over Heck exists within the tension created between the majority opinion and Justice Souter's concurrence. This tension was reiterated in Spencer v. Kemna, 523 U.S. 1 (1998). In Spencer, a prisoner sought to invalidate a parole revocation, first in state court, and subsequently through a federal habeas petition. Id. at 5-6. Before the district court addressed the merits of the habeas petition, the prisoner's sentence expired. Id. at 5. The Supreme Court held that the expiration of the prisoner's sentence caused his petition to become moot because it no longer presented an Article III case or controversy. Id. at 18. The petitioner argued that because Heck would foreclose him from pursuing a damages action under § 1983 "unless he can establish the invalidity of his parole revocation, his action to establish

12

that invalidity cannot be moot." Id. at 17.  Scalia, again writing for the majority, brushed

this argument aside as "a great non sequitur, unless one believes (as we do not) that a

§ 1983 action for damages must always be available." Id.

Justice Souter, concurring in Spencer, found that "[t]he better view, then, is that a

former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the

unconstitutionality of a conviction or confinement without being bound to satisfy a

favorable-termination requirement that it would be impossible as a matter of law for him

to satisfy." See id. at 21 (Souter, J., concurring, joined by O'Connor, Ginsburg, and

Breyer, JJ.).  Significantly, Justice Stevens, in dissent, stated that "[g]iven the Court's

holding that petitioner does not have a remedy under the habeas statute, it is perfectly

clear, as Justice Souter explains, that he may bring an action under § 1983." Id. at 25

n.8 (Stevens, J., dissenting).  Based on the foregoing concurring and dissenting

opinions, several circuit courts have found that Spencer includes a "patchwork plurality"

of five Supreme Court Justices expressing the view that colorable § 1983 claims are

barred by Heck's favorable-termination requirement only when the alternative remedy of

habeas relief is available.

### ii.    The Circuit Split

A circuit split has developed regarding the application of Heck to situations

where a claimant, who may no longer bring a habeas action, asserts a § 1983

complaint attacking a sentence or conviction.[2]  Four circuits reject the idea that the

---

[2]     Dible v. Scholl, 410 F. Supp. 2d 807 (N.D. Iowa 2006), provides an in-depth and comprehensive analysis of the legal landscape surrounding the Heck decision.  It should be mentioned that Dible was "reluctantly" overturned by Dible v. Scholl, No. C05-4089-PAZ, 2008 WL 656076, *5 (N.D. Iowa Mar. 7, 2008), in light of the Eighth Circuit's decision in Entzi v. Redmann, 485 F.3d 998 (8th Cir. 2007).  In addition, Wilson v. Johnson, 535 F.3d 262, 268 (4th Cir. 2008), contains a majority and

plurality in Spencer restricts the favorable-termination requirement of Heck for § 1983

actions challenging the validity of a conviction or sentence.  See Figueroa v. Rivera,

147 F.3d 77, 81 n.3 (1st Cir. 1998) (the First Circuit reasoned that it was bound to apply

Supreme Court precedent, "even if that precedent appears weakened by

pronouncements in its subsequent decisions," because only the Supreme Court has the

authority to overrule its own decisions) Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir.

2007) (declining to read Spencer to allow a former prisoner to maintain his § 1983

action on the grounds that Heck did not differentiate between prisoners and

habeas-ineligible former prisoners for purposes of applying the favorable-termination

rule and no Supreme Court decision had "explicitly overrule[d]" Heck ); Gilles v. Davis,

427 F.3d 197, 209-10 (3d Cir. 2005) (declining to recognize a Heck exception for a

habeas-ineligible plaintiff on the grounds that the court had no authority to question

Heck's "continued validity"); Randell v. Johnson, 227 F.3d 300, 301-02 (5th Cir. 2000)

(declining to recognize a Heck exception for a § 1983 plaintiff who was no longer

imprisoned because it is not the prerogative of a lower federal court to "announce for

the Supreme Court that it has overruled one of its decisions").

On the other hand, Five circuits have found that under certain circumstances the

Spencer plurality allows a plaintiff to obtain relief under § 1983 when it is no longer

possible to meet the favorable-termination requirement via a habeas action.  See

Wilson v. Johnson, 535 F.3d 262, 268 (4th Cir. 2008) ("we do not believe that a habeas

ineligible former prisoner seeking redress for denial of his most precious right –

freedom – should be left without access to a federal court"); Powers v. Hamilton County

---

dissent, which together succinctly lay out the arguments on each side of the Heck
debate discussed herein.

Public Defender Comm'n, 501 F.3d 592, 601 (6th Cir. 2007) ("What is dispositive in

[plaintiff's] situation is not that he is no longer incarcerated, but that his term of

incarceration – one day – was too short to enable him to seek habeas relief."); Nonnette

v. Small, 316 F.3d 872, 877 n.5 (9th Cir. 2002) ("We conclude that Heck does not

control, and reach that understanding of Heck's original meaning with the aid of the

discussions in Spencer"); Huang v. Johnson, 251 F.3d 65, 75 (2d Cir. 2001) (concluding

that Heck did not bar a plaintiff's claim "in light of both the Spencer majority's dictum

and the fact that the Spencer concurrences and dissent "revealed that five justices hold

the view that, where federal habeas corpus is not available to address constitutional

wrongs, § 1983 must be"); Carr v. O'Leary, 167 F.3d 1124, 1127 (7th Cir. 1999) ("The

dictum in Spencer v. Kemna casts sufficient doubt on the applicability of Heck to the

present case to make it unreasonable to relieve the defendants from their waiver of

Heck.").

A cornerstone for many courts that take the latter position is that the holding of

Heck does not address whether the favorable-termination requirement applies to

plaintiffs who may no longer bring a habeas action.  "The plaintiff in Heck was still

incarcerated and so could have sought habeas relief.  Thus, adopting Justice Souter's

rationale does not amount to a failure to follow Heck where Heck offered no binding

guidance on the application of the favorable-termination requirement to the

circumstances" involving a § 1983 claimant with no recourse in habeas.  Powers, 501

F.3d at 602-03.

In Guerrero v. Gates, 442 F.3d 697 (9th Cir. 2006), the Ninth Circuit articulated

narrow circumstances where a § 1983 claim was available to a plaintiff who has not

satisfied Heck's favorable-termination requirements.  First, the court explained that if

habeas relief is unavailable because of a plaintiff's failure to timely pursue habeas remedies, Heck continues to bar a § 1983 claim filed by a plaintiff no longer in custody. Id. at 705. The Guerrero opinion notes that the plaintiff in Spencer "diligently sought relief for his claim of invalid revocation of parole. After appealing the denial of his state habeas petition all the way to the state supreme court, he filed a federal habeas petition. His prison term ended, however, before the court could render a decision." Id. at 704. Second, the court stated that the exception announced earlier by the Ninth Circuit in Nonnette "'affects only former prisoners challenging loss of good-time credits, revocation of parole or similar matters,' not challenges to an underlying conviction." Id. at 705 (quoting Nonnette, 316 F.3d at 878 n.7).

### iii.   Eleventh Circuit Precedent

The Eleventh Circuit has not ruled definitively on this issue and has instead sent mixed signals. In Abusaid v. Hillsborough County Bd. of County Comm'rs, 405 F.3d 1298 (11th Cir. 2005), Judge Marcus noted that the Eleventh Circuit "has not yet weighed in" on the issue of "whether Heck bars § 1983 suits by plaintiffs who are not in custody and thus for whom habeas relief is not available." Id. at 1315 n.9. In Abusaid, an owner of a dance hall sued a county and its sheriff under § 1983 alleging that an ordinance regulating dance halls was unconstitutional and that the sheriff unconstitutionally enforced the ordinance. The court reversed a district court decision that Eleventh Amendment immunity shielded defendants from the claims. See id. at 1317. In the opinion, the court raised *sua sponte* the issue of whether Heck barred the plaintiff's claims. See id. at 1315. In dicta, the opinion states that if "habeas relief is not available" to the petitioner, "he may be entitled to bring a § 1983 suit." Id. at 1315 n.9. However, the issue was remanded to the district court to determine whether habeas

relief was available at the time of filing the § 1983 action.  Id.[3]  Further, the court found

that an additional factual issue was whether plaintiff's claims "necessarily imply the

invalidity of his conviction or sentence."  Id.[4]

Shortly after Abusaid, an unpublished per curiam decision by the Eleventh Circuit

also grappled with this issue.  See Vickers v. Donahue, 137 Fed. App'x. 285, 289 (11th

Cir. 2005).[5]  In Vickers, the court reviewed the relevant Supreme Court precedent and

acknowledged that several circuits have relied on Spencer to permit § 1983 actions to

move forward, without satisfying Heck's favorable-termination requirement, where the

plaintiff could no longer bring a habeas action.  Id. at 287-89.  The opinion goes on to

state:

> we have not explicitly ruled on whether a plaintiff who has no federal
> habeas remedy available to him may proceed under § 1983 despite the
> fact that success on the merits would undermine the validity of, in this
> case, an order of revocation and the resulting nine month sentence, we
> decline to do so here because it is unnecessary to the outcome of
> Vickers's case.

Id. at 289.  The court then held "that the Heck bar applies to Vickers's claim despite the

---

[3]     On this point, the court pointed out that a plaintiff on probation can be
found to meet the "in custody" requirement for habeas relief.  Id. (citing Duvallon v.
Florida, 691 F.2d 483, 485 (11th Cir. 1982)).

[4]     On remand the district court found that plaintiff was no longer on
probation or otherwise "in custody" when he filed the suit and therefore habeas relief
was not available.  See Abusaid v. Hillsborough County Bd. of County Comm'rs, No.
8:03-cv-904-T-23TBM, 2007 WL 2669210, *11 (M.D. Fla. Sept. 6, 2007).  The court
also found that plaintiff's claims for damages would imply the invalidity of convictions
that have not been overturned.  Id.  The court held that such claims were barred by
Heck because "absent a clear statement by the Court overruling or qualifying Heck, the
proper result is that . . . Heck applies until the Supreme Court says otherwise."  Id. at
*12.

[5]     Unpublished opinions of the Eleventh Circuit "are not considered binding
precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2; accord
Poole v. Rich, 312 Fed. App'x. 165, 168 n.4 (11th Cir. 2008).

unavailability of habeas relief." Id. at 290.  The opinion discusses several reasons for this holding.  First, plaintiff was not without a remedy to seek relief from his sentence of imprisonment, as he could have appealed the order imposing that sentence and, had he prevailed, his § 1983 claim would not be barred.  Id. at 289.  Second, the court held that because "Vickers's claim here would imply the invalidity of the order of revocation and nine-month sentence he received" without first obtaining a favorable termination, Vickers's claim was Heck-barred.  Id. at 289-90.  Third, the court pointed out that the three circuit decisions "that permitted a plaintiff to pursue a § 1983 claim because no habeas relief was available did not involve a situation where a conviction itself was called into question."  Id. at 290.  In other words, the plaintiff's claim in Vickers was barred because the factual basis for his § 1983 claim "directly undercuts a signed court order" finding that plaintiff violated his community control.  Id.

In McClish v. Nugent, 483 F.3d 1231 (11th Cir. 2007), the Eleventh Circuit, in another opinion by Judge Marcus, discussed Heck again.  First, the court found that Heck did not apply to plaintiff's case because there was no standing conviction.  In McClish, the plaintiff's § 1983 claim arose out of a charge that was ultimately dismissed after plaintiff participated in a pretrial intervention program.  See id. at 1251.  However, the court went on to state that even if it "were to assume that Heck somehow applies to this case, [plaintiff] correctly cites [Abusaid] for the proposition that the Supreme Court has apparently receded from the idea that Heck's favorable-termination requirement also applies to non-incarcerated individuals."  Id. at 1252 n.19.  The court continued:

> The logic of our reasoning in Abusaid, although dicta, is clear:  If Heck only bars § 1983 claims when the alternative remedy of habeas corpus is available, then Heck has no application to [plaintiff's] claims.  [Plaintiff] was never in custody at all, and the remedy of habeas corpus is not currently available to him.

Id.

In a recent unpublished *per curiam* decision, the Eleventh Circuit rejected a

plaintiff's claim that Heck did not require dismissal "because he has no habeas remedy

remaining." Christy v. Sheriff of Palm Beach County, Florida, No. 07-11912, 2008 WL

3059718, *7 (11th Cir. Aug. 5, 2008). In Christy, the two claims that implicated Heck

were plaintiff's claims that a former deputy sheriff (1) entered into an unlawful

racketeering enterprise with a confidential informant that led to plaintiff's arrest, and (2)

embellished and falsified information in plaintiff's arrest report. Id. at *2-3. The court

found that the district court "was correct to dismiss these claims under Heck because if

[plaintiff] prevailed on these two claims, it would necessarily imply the invalidity of his

1985 conviction." Id. at *7. The court then refused to entertain plaintiff's argument that

his lawsuit "must be allowed to proceed because habeas relief is unavailable." Id. at *8.

The court cited Vickers and stated that "we have expressly declined to consider that

issue where the § 1983 action is otherwise barred under Heck." Id. The court included

a "see also" cite to Abusaid with a parenthetical that the opinion "not[ed] the issue but

allow[ed] the district court to address it first." Id.

At the district court level, Judge Huck recently dealt with a § 1983 claim brought

by a plaintiff that was no longer incarcerated. See Baker v. City of Hollywood, No.

08-60294-CIV, 2008 WL 2474665 (S.D. Fla. June 17, 2008). There, the court found

that it "need not inquire as to whether Plaintiff has been deprived of a means of

challenging his conviction and weigh whether there should be an exception to the Heck

bar. This is because Plaintiff did seek postconviction relief at the state level but

voluntarily withdrew such claims . . . ." Id. at *7. Relying on Vickers, Judge Huck

reasoned that "even though a habeas corpus action is currently unavailable to Plaintiff

here, he was not without an avenue to seek relief from his conviction." Id. In addition,

the plaintiff in Baker was still actively seeking relief from his conviction by appealing the

withdrawal of his motion for postconviction relief. Therefore, the court found plaintiff's

claims were subject to dismissal without prejudice to be refiled if and when plaintiff

obtained a favorable resolution of his conviction. Id.

Another recent district court opinion that discussed the state of the law regarding

Heck in the Eleventh Circuit is Abdullah v. City of Jacksonville, No. 3:04-cv-667-J-

32TEM, 2006 WL 2789137 (M.D. Fla. Sept. 26, 2006). In Abdullah, after discussing

Spencer, Vickers and the circuit split, the court stated:

> In the present case, the gravamen of plaintiff's § 1983 claim is that the
> JSO Officers . . . unlawfully arrested him and caused him to spend
> twenty-nine days in prison at the Duval County Pretrial Detention Facility
> based on "false charges." Plaintiff's § 1983 claim attacks the very reason
> he was arrested and later adjudicated guilty (based on the plea of no
> contest). Like in Vickers, if plaintiff here is allowed to proceed with his §
> 1983 claim and prevails, such a result would impliedly render his
> conviction invalid, which is the precise situation that Heck seeks to
> preclude.

Id. at *4. Ultimately, the court found that "[w]hile it appears the Eleventh Circuit would

find plaintiff's claim Heck barred, because the City does not raise or rely on Heck, the

reach of Heck in these circumstances is not entirely settled in the Eleventh Circuit and

plaintiff's § 1983 suit fails for other reasons, the Court declines to decide this case on

Heck grounds." Id.[6]

---

[6]   The Eleventh Circuit has held that Heck's favorable-termination
requirement "does not bar purely procedural claims brought under § 1983." Harden v.
Pataki, 320 F.3d 1289, 1295 (11th Cir. 2003). In Harden, the plaintiff argued that he
was extradited from Georgia to New York in violation of his due-process rights because
he was denied a pre-extradition habeas hearing. The Eleventh Circuit held that the
plaintiff's procedural challenge could go forward because "extradition procedures, even
if they violate federal rights, have no bearing, direct or implied, on the underlying guilt or
innocence of the person extradited." Id. at 1297 (emphasis in original). In addition, the
court concluded that a "second reason" the favorable-termination requirement did not
apply was "because [if] federal habeas corpus is not available to a person extradited in
violation of his or her federally protected rights . . . § 1983 must be." Id. at 1299. The
Eleventh Circuit reasoned that "[i]f it were not, a claim for relief brought by a person
already extradited would be placed beyond the scope of § 1983, when exactly the same
claim could be redressed if brought by a person to be, but not yet, extradited." Id.

**D.   *Application of Heck to Plaintiff's Case***

Heck squarely applies to the facts of this case. First, Plaintiff's § 1983 claims directly "imply the invalidity" of Plaintiff's convictions. Vickers, 137 Fed. App'x. at 289-90; see also Christy, 2008 WL 3059718 at *7. Indeed, Plaintiff expressly asks the Court to "remove any and all criminal charges" arising from the convictions at issue. Am. Compl. ¶ 38. Moreover, the basis of Plaintiff's claims is that the judges, prosecutors and even public defenders involved in Plaintiff's convictions were biased against the Plaintiff. "A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." Edwards v. Balisok, 520 U.S. 641, 647 (1997) (citing Tumey v. Ohio, 273 U.S. 510, 535 (1927); Arizona v. Fulminante, 499 U.S. 279, 308 (1991)). In Edwards, the Supreme Court held that "respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Edwards, 520 U.S. at 648.[7]

Second, it is undisputed that Plaintiff cannot, at this point, meet Heck's favorable-termination requirement. See, e.g., Response to Wennet MTD at 1 ("Plaintiff is actively pursuing her Post-Conviction Relief remedies to overturn her illegal conviction."). Although Plaintiff is no longer incarcerated and likely unable to bring a habeas action,[8] this Court holds that Heck's favorable-termination requirement bars Plaintiff from bringing the § 1983 claims alleged in the Amended Complaint. See

---

[7]    The claimant in Edwards was incarcerated so the Supreme Court did not address the issues raised in Heck and Spencer.

[8]    The parties did not address whether Plaintiff is on probation or could otherwise satisfy the "in custody" requirement for habeas relief.

Vickers, 137 Fed. App'x. at 289-90; Baker, 2008 WL 2474665 at *7.  This Court agrees with Judge Huck's reasoning in Baker that "even though a habeas corpus action is currently unavailable to Plaintiff here, [she] was not without an avenue to seek relief from [her] conviction."  Baker, 2008 WL 2474665 at *7.

The Court also finds that Plaintiff's § 1983 claims could not survive under some of the exceptions carved out of the favorable-termination requirement in light of Spencer.  See, e.g., Guerrero, 442 F.3d at 704-05.  For example, Plaintiff's case would present a much more difficult question if her § 1983 claims were based on a latent injury or a conspiracy discovered by the Plaintiff only after expiration of the applicable limitation period to file a habeas petition or a motion for post-conviction relief.  In contrast, the facts before this Court reveal that Plaintiff entered into a plea agreement with knowledge of all or substantially all of the allegations that now form the basis of a § 1983 action for damages.  The Court finds that to allow the Plaintiff to circumvent applicable state procedures and collaterally attack her convictions in federal court "is the precise situation that Heck seeks to preclude."  Abdullah, 2006 WL 2789137, at *4.

Further, the Court is not persuaded by Plaintiff's argument that "[g]iven the former position of Defendant Wennet as a criminal judge, Plaintiff's case could not logically or legally be pursued in a Florida State court given the inherent and obvious conflict of interest."  Response to Wennet MTD at 3.  A § 1983 claimant cannot impugn an entire state court system on the basis of allegations that a single state judge is biased against the claimant.  Taking Plaintiff's allegations as true, there is nothing in the Amended Complaint to support an inference that the state appellate court handling Plaintiff's appeal will not follow the law.  Moreover, the fact that Defendant Wennet is no longer a state court judge only reinforces the Court's determination.

Therefore, in light of the foregoing reasons, the Court will dismiss Plaintiff's §

1983 claims for failure to satisfy <u>Heck's</u> favorable-termination requirement.  The

dismissal will be without prejudice to refile such claims if and when Plaintiff obtains a

favorable resolution of her pending action for post-conviction relief.

**2.      Plaintiff's Claims Against Detective Mahoney and Defendant Steinebach**

As mentioned, this cause is before the Court on the Wennet MTD and the

Haughwout MTD.  On March 10, 2009, Plaintiff filed a Motion to Extend Time for

Service by United States Marshal Upon Defendant Mahoney [DE 20].  That motion

indicated that Defendant Mahoney had not yet been served with the Amended

Complaint and his current whereabouts were unknown.  To date, the record reflects

that Defendant Mahoney has not been served or made an appearance in this action.

Nevertheless, the Court will exercise its authority under § 1915 to dismiss the § 1983

claims alleged against Defendant Mahoney.  <u>See</u> 28 U.S.C. § 1915(e)(2)(ii) ("the court

shall dismiss the case at any time if the court determines that . . . the action . . . fails to

state a claim on which relief may be granted").  Plaintiff alleges claims of false arrest

and false imprisonment against Detective Mahoney.  Am. Compl. § VII.  If true, the

alleged behavior engaged in by Detective Mahoney, <u>i.e.</u>, the threatening and vulgar

language used by the detective, is reprehensible.  However, without a finding that

Plaintiff's arrest or imprisonment was unlawful, there can be no deprivation of federal

rights upon which a valid § 1983 claim can be based.  Therefore, Plaintiff's § 1983

claims against Detective Mahoney are currently precluded by <u>Heck</u>.  Likewise, the Court

will dismiss without prejudice the Plaintiff's § 1983 claims of false arrest, false

imprisonment and conspiracy alleged against Defendant Steinebach pursuant to the

Court's authority under § 1915.  Am. Compl. ¶ 37.[9]

---

[9]      Defendant Steinebach has appeared in this action and filed an Answer to
Complaint [DE 12] *pro se* wherein he requested that the Court "dismiss[ ] the complaint

3.    **Plaintiff's State Law Claims**

In general, if all federal claims are eliminated before trial, the pendent state claims should be dismissed.  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004); see also Fiscus v. City of Roswell, 832 F. Supp. 1558, 1564-65 (N.D. Ga. 1993) (court declined to retain supplemental jurisdiction over state law claims of intentional infliction of emotional distress, false imprisonment and false arrest after entering summary judgment for defendants on federal claims of Fourth, Eighth and Fourteenth Amendment violations). Therefore, because the Court has determined that the federal claims in the Amended Complaint must be dismissed, the pendent state law claims will likewise be dismissed, allowing the Plaintiff, if appropriate, to pursue relief in a state forum.  Accordingly, the Court will grant the Wennet MTD and the Haughwout MTD.

4.    **Plaintiff's Constitutional Challenges to Florida Statutes**

The Amended Complaint claims that the manner in which the state court applied certain Florida Statutes in connection with the charges brought against Plaintiff "violates the Constitution of the United States of America." Am. Compl. ¶ 35.  In response to the Wennet MTD, Plaintiff argues that "Plaintiff Domotor's case is based upon acts which are not crimes.  The statute under which Plaintiff was charged does not give a public figure a reasonable expectation of privacy on a public beach and violated Plaintiff's right to Free Speech."  Response to Wennet MTD at 2-3.

Also pending before this Court is a related action, Domotor v. Office of Attorney

_____

as frivolous."

General, Case No. 09-cv-80616-Cohn. In that action, Plaintiff seeks a declaratory judgment that "Florida State Statutes, 923.03 1A (FT) – Eavesdropping – Illegal Interception of Communication, and 934.03 1C (FT) – Invade Privacy – Illegal Disclosure of Communication," as written, applied or interpreted to Plaintiff's criminal charges violate the United States Constitution. Therefore, the Court will address the constitutional concerns raised in the Amended Complaint and Plaintiff's Response to Wennet MTD in the context of that separate action.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Wennet's Motion to Dismiss [DE 13] and Defendant Carey Haughwout Public Defender's Motion to Dismiss [DE 23] are hereby **GRANTED**.

2. Plaintiff's First Amended Complaint [DE 9] is hereby **DISMISSED without prejudice**.

   a. The Plaintiff's § 1983 claims are dismissed without prejudice to be refiled if Plaintiff is able to satisfy Heck's favorable-termination requirement.
   b. Due to the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's pendant state law claims.
   c. The Court exercises its authority under § 1915 to dismiss Plaintiff's claims alleged against Defendants Mahoney and Steinebach.

3. Any other pending motions are hereby **DENIED as moot**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this _30th_ day of June, 2009.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to:

Julie Ann Domotor, *pro se*

Counsel of record via CM/ECF